IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEVIN ELY,                          :
     Plaintiff,                 :
                                 :
vs.                                 :          CIVIL ACTION 15-566-KD-M
                                 :
MOBILE COUNTY SCHOOL BOARD,          :
     Defendant.                 :

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant[1] Mobile County School Board's Motion to Dismiss Plaintiff's Complaint (doc. 9) under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Devin Ely, proceeding *pro se,* has filed a response in opposition to the motion (doc. 12), as well as a second amended complaint (doc. 13), to which the defendant replied with an additional brief in support of its motion to dismiss.  (Doc. 14).

This motion is now under submission and has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S).  Upon consideration, and for the reasons stated herein, the undersigned recommends that the

---

[1] In its motion to dismiss, the defendant identifies that the proper designation of Defendant is the Board of School Commissioners of Mobile County, Alabama.  (Doc. 10 at 1).

motion to dismiss be granted and the second amended complaint be dismissed with prejudice unless Plaintiff files a viable third amended complaint **on or before may 25, 2016.**

I.   Background.[2]

Plaintiff brings this action against the Mobile County School Board ("the school board" or "the Board") claiming that he suffered discrimination based on "race, size, and disabilities" causing him to have "limited choices for higher education" and "prevented [him] from earning possible scholarships."  (Doc. 1 at 2; Doc. 4 at 2).  Ely's pleadings, however, are ambiguous in identifying the law under which he brings his claims and vague in defining his allegations.[3]  To the best of the court's discernment, this action centers on Ely's contentions that the school board violated various federal laws related to the education of

---

[2]    In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)).
[3]    In the original complaint, Ely states he is bringing this action pursuant to "Education, McKinney Vento, Special Education, Unsportsman like conduct, Illegal withdrawals. etc…[.]" (Doc. 1 at 2).  The first amended complaint, which is otherwise identical to the originally filed complaint, Ely adds the allegation of slander and grade hindrance to the asserted claims.  (Doc. 4 at 2).

children with special needs, disabilities, or those who are
homeless.  (Docs. 1, 4, 13).

The defendant responded to Plaintiff's bare bones
allegations with a motion to dismiss for failure to state a
claim upon which relief may be granted, noting that

> Plaintiff has stated no factual basis whatsoever
> for any possible claim for racial discrimination
> under any discrimination statute. Furthermore, he
> has set out absolutely no factual basis for any
> claim of disability discrimination. The Plaintiff
> does not set out any factual basis whatsoever for
> any claim of discrimination based upon his size.
> Finally, the Plaintiff has also not set out any
> factual basis for his claim that he was not
> successful for higher education and scholarship
> opportunities.

(Doc. 10 at 1).  Plaintiff Ely opposed the Board's motion
with two statements: (1) that his "complaints are true and
deserve a trial by jury" and (2) his "complaint(s) will and
has identified federal violations that should be
trialed[sic] in federal court."  (Doc. 12 at 1).

Additionally, Ely filed a second amended complaint
alleging he was "discriminated against for years and
suffered grade tampering, suspensions, etc. [and the]
Mobile County School Board also failed to give [him]
Special Education Services for years during [his] tenure of
schooling."  (Doc. 13 at 3).  Ely further claims the
Board's federal law violations caused him to be ineligible
to participate in school sports his junior and senior year

3

of high school, and caused him to "suffer[] academically, emotionally, and mentally, [as his] living status was exposed by liaisons, and [he] was embarrassed by his peers." (Doc. 13 at 3).  Ely seeks punitive and compensatory damages and continued education assistance for the emotional stress and mental anguish endured.  (*Id*. at 2).

Again, the school board responded with a brief in support of its motion to dismiss, arguing that Plaintiff has yet to cure the deficiencies of his pleadings and has failed to state a claim upon which relief may be granted. (Doc. 14).  The Board identifies claims in the action that are unexhausted based on federal law or moot due to Plaintiff's graduation.[4]  (*Id*. at 2).  The defendant further maintains that several of Ely's stated claims do not support a federal cause of action and should be dismissed.[5]

---

[4]    The defendant argues that, although not identified as such, Plaintiff appears to be asserting claims under the Individual with Disabilities Education Act, 20 U.S.C. § 1415(f), and such claims require exhaustion of administrative remedies prior to bringing this action.  (Doc. 14 at 2).  Also, that Plaintiff's claims of Family Educational Rights and Privacy Act and McKinney-Vento Act violations are superseded by his graduation in May of 2014 from a Mobile County high school.  (*Id*. at 2 and n.1).
[5]    The defendant contends that Ely has no federal cause of action for "being embarrassed by one's peers at school," "having one's living status exposed by liaisons," "no right to play sports," or "for grade tampering or suspensions."  (Doc. 14 at 2).

And, lastly, the Board argues it is immune from suit, pursuant to Art. 1 Sec. 14 of Ala. Const., from any state law claims. (*Id*. at 3-4).

## II.  Legal Standard.

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which rule provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009). There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. And while a complaint drafted by a *pro se* plaintiff is "[held] to less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652, (1972) (per curiam), it "must [still] set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Thus, when considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-

case basis, that well pleaded factual allegations are true
and then determine whether they plausibly give rise to an
entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710
(11th Cir. 2010).  Finally, "[w]here a more carefully
drafted complaint might state a claim, a plaintiff must be
given at least one chance to amend the complaint before the
district court dismisses the action with prejudice." *Bank
v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)(per curiam),
*overruled in part by Wagner v. Daewoo Heavy Indus. Am
Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  *See also
Watkins v. Hudson*, 560 Fed. App'x 908, 911 n. 2 (11th Cir.
2014) (explaining that *Wagner* overruled *Hudson* with respect
to plaintiffs who are represented by counsel).

**III. Analysis.**

1.   Claims Under the Individuals with Disabilities
     Education Act are Unexhausted.

     Plaintiff Ely claims that he was discriminated against
based on "disabilities" and that the Board "failed to give
[him] special education services for years during [his]
tenure of schooling."  (Doc. 13 at 2-3).  The defendant
submits that this claim would fall under the Individuals
with Disabilities Education Act and, therefore, must first
be brought before a Hearing Officer in a state
administrative proceeding according to the federal statute.

The undersigned agrees with the defendant that any discrimination and special education claims fall within the parameters of the Individuals with Disabilities Education Act (IDEA), despite the fact that Ely failed to identify the IDEA as a statute under which he brings his suit. "Even when a plaintiff does not bring claims under the IDEA, the courts must look at the relief requested to determine whether the relief is available under the IDEA. . . ." *Barnett v. Baldwin Cnty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1228 (S.D. Ala. 2014) (citing *Babicz by & Through Babicz v. School Bd.*, 135 F.3d 1420, 1422 n. 10 (11th Cir. 1998) ("[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute," such as Section 504 of the Rehabilitation Act or the Americans with Disabilities Act.).

The IDEA was enacted in part "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A)-(B).  To fall within the statute, a child must have "intellectual disabilities, hearing impairments

(including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . ., orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities[.]"  20 U.S.C.S. § 1401(3)(A)(i).  The parent of a child, a State educational agency or other State agency "may initiate a request for an initial evaluation to determine if the child is a child with a disability."  20 U.S.C.S. § 1414(a)(1)(B).  After a student is identified as disabled, an individualized education plan (IEP) is created.  An IEP is "a comprehensive written statement that outlines the child's annual goals and the education and related services needed to achieve those goals[,]" and is "developed by a team of the child's parents, teachers, and school administrators." *Jennifer B. v. Chilton Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1313, 1320 (M.D. Ala. 2012); *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir.2008) (internal quotation marks omitted).

To file a federal lawsuit pursuant to the Individuals with Disabilities Education Act, "plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." *N.B. v. Alachua*

*County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir.1996) (finding that plaintiff must exhaust administrative remedies before proceeding with a § 1983 claim for violations of the IDEA).  This administrative process does not "restrict or limit the rights, procedures, and remedies available under the Constitution . . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter[.]"  20 U.S.C. § 1415(l).  "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir.1996) (finding that plaintiff must exhaust administrative remedies before proceeding with a § 1983 claim for violations of the IDEA).

   The Eleventh Circuit has held that the "IDEA's exhaustion requirement" applies to a "'broad' spectrum of claims." *A.L. ex rel P.L.B. v. Jackson Cnty. Sch. Bd.*, 543 F. App'x 1002, 1005 (11th Cir. 2013).  The Eleventh Circuit

Court explained that the "exhaustion requirement applies to claims asserting the rights of disabled children under not only the IDEA, but also the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act, and the Constitution." *Id.* at n.4 (citing *M.T.V. v. Dekalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1157-58 (11th Cir. 2006)) ("any student who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute") (citations and internal quotations marks omitted); *School Bd. of Lee County, Fla. v. M.M. ex rel M.M.*, 348 F. App'x 504, 512 (11th Cir. 2009) (finding that the parents' "claims of retaliation and deprivation of civil rights brought under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act, and their claim that the Board breached the terms of the Settlement Agreement" were properly dismissed for failure to exhaust under the IDEA administrative scheme).

The complete lack of essential facts within Ely's complaint makes it uncertain whether he has pleaded a proper claim pursuant to the IDEA, as Ely fails to identify the nature of his disability, the date or place of his schooling, any requests for obtaining assistance, responses from school officials, etc.  However, Ely does use key words and phrases (disability, special education services,

discrimination) that trigger the undersigned to conclude
that any conceivable claim of Ely's would fall under the
IDEA, and the record before the court evidences that Ely
has not filed for a state administrative proceeding before
a Hearing Officer as provided for in the federal act,
making his claims before this court unexhausted.

Thus, relief sought by Ely (compensation for failure
to provide special education services for his unidentified
disability) is inextricably intertwined with the IDEA and
its purpose of providing public education to those children
with disabilities, and such claims must be dismissed for
failure to exhaust the administrative remedies under the
IDEA.

2.  Failure to State a Claim Under the Family
    Educational Rights and Privacy Act and the McKinney-
    Vento Act.

Plaintiff Ely contends that the Board violated the
"Family Educational Rights and Privacy Act (FERPA) and
McKinney-Vento Act by posing barriers to enrollment,
forcing caregivers to obtain legal custody and not
providing transportation and education assistance."  (Doc.
13 at 3).  The defendant has moved for dismissal of these
claims asserting that any such claims would be superseded

by his May 2014 graduation from Rain High School, a Mobile County, Alabama public school.  (Doc. 14 at 2).

The Family Educational Right and Privacy Act (FERPA), 20 U.S.C.S. § 1232g, gives parents the right to access their minor child's education records and regulates the disclosure of certain information within school records. 20 U.S.C.S. § 1232g(a), (b).  Ely's complaint lacks mention of any facts related to his school record being wrongly disclosed to outside parties or to his or his family's inability to obtain information within Ely's school file. Accordingly, Ely's claim does not encompass allegations that appear to fall under FERPA.

Moreover, Ely's alleged FERPA violation fails, most importantly, because enforcement of the statute is solely in the hands of the Secretary of Health, Education and Welfare under § 1232g(f).  Therefore, there is no private right of action under FERPA, and Ely may not bring a cause of action pursuant to this federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 153 (2002) (Nondisclosure provisions of Family Educational Rights and Privacy Act of 1974, did not create rights enforceable under 42 USCS § 1983 because provisions contained no rights-creating language, had aggregate rather than individual focus, and served primarily to direct United States Secretary of Education's

distribution of public funds to educational institutions.);
*Shockley v. Svoboda,* 342 F.3d 736, 84 (7th Cir. 2003)
(same); *Langston v. ACT,* 890 F.2d 380, n.12 (11th Cir.
1989) (same*); Steven H. Duval Cnty. Sch. Bd*., 1999 U.S.
Dist. LEXIS 23349 (M.D. Fla. Sept. 2, 1999) (same).
Consequently, Ely has no right to bring his claims pursuant
to FERPA and all such claims must be dismissed.

As to the claims allegedly arising under the McKinney-
Vento Act, the undersigned finds they too fail.  The
McKinney-Vento Act ensures that "each homeless youth has
equal access to the same free, appropriate public education
. . . provided to other children and youths."  42 U.S.C. §
11431 (2004).  The Act authorizes the Secretary of
Education to grant funds to the states that comply with the
provisions of the Act.  *Id*.  To be eligible to receive
funds pursuant to the Act, a state must, amongst other
requirements, implement a system ensuring that homeless
children are immediately enrolled in a school (typically
the one they were enrolled in prior to becoming homeless –
their "school of origin"), that transportation be provided
to the child, and the needs of the homeless child are
identified and accessed.  § 11432 (e)(3)(E)(i), (g).
Notably, these strategies are not to be hindered and
enrollment into school is not to be delayed by requirements

of immunization, residency, lack of records or documents,
guardianship issues, or uniform requirements. §§
11432(g)(1)(H), (g)(3)(A)-(I).  The Act further obliges
schools to: designate a "liaison for the homeless" youths
to carry out the duties imposed by the Act and identify
other federal programs for which the homeless youth might
benefit; adopt policies ensuring that homeless youths "are
not stigmatized or segregated on the basis of their status
as homeless"; and to provide transportation, "at the
request of the parent or guardian," for the homeless child
to and from his school of origin.  42 U.S.C. § 11432(g)(J),
(g)(4)-(6).

The McKinney-Vento Act does confer rights on its
beneficiaries that are enforceable in a private right of
action, *see Lampkin v. District of Columbia*, 27 F.3d 605,
*cert. denied*, 513 U.S. 1016 (1994); however, Plaintiff Ely
has failed to state a plausible claim for relief under the
Act due to the absence of vital facts in his complaint.

A cursory reading of the second amended complaint
*suggests* that Ely may have been a homeless student who
encountered difficulties enrolling in school and receiving
needed assistance.  If true, such allegations could be
violations of the Act.  However, Ely's complaint is too
vague to establish needed elements and facts necessary to

15

state a valid claim pursuant to the McKinney-Vento Act.
For instance, the complaint states that Ely's "living
status was exposed by liaisons and [he] was embarrassed by
his peers," and the school board violated the Act "by
posing barriers to enrollment, forcing caregiviers to
obtain legal custody and not providing transportation and
education assistance." (Doc. 13 at 3).  Notably, and
crucially, Ely never articulates that he was in fact
*homeless* – a fundamental element to a claim under the
McKinney-Vento Act. Ely also fails to articulate what
barriers were imposed that impeded his enrollment into a
Mobile County public school, as the record reflects that he
successfully graduated from a Mobile County public school
in 2014.  Additionally, there are no details related to the
appointed liaison and his or her actions, no description of
the transportation issues faced, no account of the need for
or attempts to gain "education assistance." [6]

---

[6]     "A document filed *pro se* is to be liberally construed, and
a *pro se* complaint, however inartfully pleaded, must be held to
less stringent standards than formal pleadings drafted by
lawyers...", *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct.
2197, 167 L. Ed. 2d 1081 (2007) (citation and quotations
omitted).  Nevertheless, "a court may not 'serve as *de facto*
counsel for a party' or 'rewrite an otherwise deficient pleading
in order to sustain an action.'" *Muhammad v. Bethel*, 430 F. App'x
750, 752 (11th Cir. 2011) (quoting *GJR Invs., Inc. v. Cnty. of
Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled
on other grounds, see Randall v. Scott*, 610 F.3d 701, 709 (11th
Cir. 2010)).

Therefore, without facts describing when Plaintiff was homeless, how his enrollment was hindered, who requested transportation and who denied the same, etc., the undersigned cannot find that Ely has provided enough factual allegations that could "plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). Consequently, the undersigned agrees with the Board that Ely has not provided "enough facts to state a claim for relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and the undersigned recommends that the claims brought under the McKinney-Vento Act should be dismissed.

3. No Valid Claim Stated Under Title VI of the Civil
   Rights Act of 1964.

Title VI of the Civil Rights Act states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Reading this federal law in conjunction with Plaintiff's claim that the Board "discriminated against [him] for race" (doc. 13 at 2), leads the undersigned to acknowledge that Ely may have attempted to bring a claim under the Civil Rights Act

17

of 1964. *See Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991) (*Pro se* pleadings must be read liberally to determine "whether jurisdiction to consider [them] can be founded on a legally justifiable base."). The Court has an "obligation to look behind the label of a motion filed by a *pro se* [plaintiff] and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622,624-25 (11th Cir.1990). For this reason, the undersigned will discuss if Ely has a claim pursuant to the Civil Rights Act of 1964.

After review of the current record, the undersigned maintains that any potential claim Ely may have fails due to the lack of facts pleaded. Plaintiff Ely fails to distinguish in any of his pleadings his "race, color, or national origin" or give details as to how he was discriminated against. In fact, the pleadings are deficient in necessary facts to establish any claim of discrimination under any federal or state violation. For this reason, the undersigned recommends this claim be dismissed for failure to state a claim.

4.   <u>Immunity from State Law Tort Claims.</u>

Defendant argues any and all remaining claims against the Board are state law tort claims and are barred by

absolute state immunity under Art. I, § 14, Ala. Const.
1901 and should be dismissed.

The Alabama Supreme Court has held that "[f]or
purposes of § 14 immunity, county boards of education are
considered agencies of the State" and not the local
government entities that they serve and "that county boards
of education are immune from tort actions." *Bd. of Sch.
Com'rs of Mobile Cnty. v. Weaver*, 99 So.3d 1210, 1217
(Ala.2012) (quoting *Ex parte Monroe Cnty. Bd. of Educ.*, 48
So.3d 621 (Ala. 2010)); *see Ex parte Bessemer Bd. of Educ.*,
68 So.3d 782, 789 (Ala. 2011) ("Local school boards are
agencies of the State, not of the local governmental units
they serve, and they are entitled to the same absolute
immunity as other agencies of the State."); *Barnett v.
Baldwin Cnty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1238 (S.D.
Ala. 2014)(immunity against state law tort claims granted
to school board members in their official capacities);
*Shumate v. Selma City Bd. of Edu.*, 928 F.Supp.2d 1302,
1327-28 (S.D. Ala. 2013) (school board was considered "an
arm of the state" and § 14 immunity attached for purposes
of state law claims); *see also Ex parte Mobile Cnty. Dep't
of Human Res.*, 815 So.2d 527, 530 (Ala. 2001) (stating that
Ala. Const.1901, § 14, confers on the State of Alabama and
its agencies absolute immunity from suit in any court); *Ex*

19

*parte Tuscaloosa Cnty.,* 796 So.2d 1100, 1103 (Ala.2000)

("Under Ala. Const. of 1901, § 14, the State of Alabama has

absolute immunity from lawsuits. This absolute immunity

extends to arms or agencies of the state ....").

    For these reasons, any state law tort claims asserted

by Plaintiff in this action should be dismissed for lack of

jurisdiction.[7]

IV.  <u>Conclusion.</u>

    Remarkably, Ely's complaint is devoid of specifics

regarding the core of his claim – discrimination by the

school board.  In fact, Ely fails to state his race, size,

disability, or special education needs in any of his

pleadings.  Nor does Ely detail how the school board's

---

[7]    School boards do not enjoy the same immunity against suits in federal courts as they do in state courts. *See Stewart v. Baldwin Cnty. Bd. of Educ.,* 908 F.2d 1499, 1509-10 (11th Cir. 1990) (holding county school boards do not enjoy sovereign immunity in federal court), *upheld by Walker v. Jefferson Cnty. Bd. of Educ.,* 771 F.3d 748, 750 (11th Cir. 2014) ("[T]he Eleventh Amendment ruling in *Stewart* has not been overruled or abrogated and therefore remains binding precedent.").  The Eleventh Circuit has continuously held that county school boards, when sued in federal court, are not considered an "arm of the state" but are "more like a county or a city than a state." *Jefferson Cnty. Bd. of Educ. V. Bryn M.,* Case No.: 2:14-cv-1064-MHH, 2015 U.S. Dist. LEXIS 125439, *5 (N.D. Ala. Sept. 21 ,2015) (citing *Stewart,* 908 F.2d at 1509-10. The Eleventh Circuit has found that school boards have "a substantial amount of control over their own affairs," including "fiscal autonomy" evidenced by their ability to raise local funds and "the power to establish general education policy for the schools." *Stewart*, 908 F.2d at 1510-11. Thus, sovereign immunity for state-created tort actions has not been held equal to Eleventh Amendment immunity for federal causes of action. *Id.* at n6.

alleged violations "prevent[ed him] from being successful for higher education and possible scholarships opportunities." (Doc. 13 at 2). Clearly, Plaintiff's action is subject to dismissal under Rule 12(b)(6) for failure to state a claim.

However, before an action is dismissed *with prejudice* for failure to state a claim, a *pro se* plaintiff must be given an opportunity to amend the complaint if a more carefully drafted version might state a claim.[8] *E.g., Lee v. Alachua Cnty.*, 461 F. App'x 859, 860 (11th Cir. 2012); *Schmitt v. U.S. Office of Pers. Mgmt.*, 403 F. App'x 460, 462 (11th Cir. 2010). Therefore, the undersigned recommends that Plaintiff be given a final chance to amend his complaint after review of this report. Additionally, to cure such defects, Plaintiff should clearly state under each count the law under which he is proceeding; clearly list what facts apply to that count; clearly explain under each count how the legal right implicated by that count was

---

[8]    Notably, the complaint currently before the court is Plaintiff's second amended complaint which was submitted subsequent to the brief filed by the defendant in support of its motion to dismiss. (Docs. 10). Despite notice of the deficiencies of this action through the defendant's motion (docs. 9, 10, 13), Ely has nevertheless failed to establish a claim upon which relief may be granted.

violated (including how each element of the cause of action is alleged); and clearly articulate the relief requested — all with statements of relevant facts rendering the claims plausible but without excessive tangential or irrelevant material.

For the reasons set forth above, it is recommended that defendant's motion to dismiss be granted and that the second amended complaint be dismissed without prejudice to the plaintiff's ability to file and serve a third amended complaint **on or before May 25, 2016,** failing which it is recommended that the second amended complaint and all claims therein be dismissed with prejudice for the reasons set out above.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or

recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 11th day of May, 2016.

s/ BERT W. MILLING, JR
UNITED STATES MAGISTRATE JUDGE